UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| NICHOLE W. STEINBACK, | ) | CIV. 12-5031-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Nichole W. Steinback filed a complaint appealing from an administrative law judge's (ALJ) decision denying disability insurance benefits. (Docket 1). Defendant[1] denies plaintiff is entitled to benefits. (Docket 5). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 8). The parties filed their JSMF. (Docket 10). The parties also filed a joint statement of disputed facts ("JSDF").[2] (Docket 11). For the reasons stated below, plaintiff's

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin is automatically substituted for Michael J. Astrue as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The court finds the JSDF's medical records summaries are factually accurate with supporting references to the administrative record.

motion to reverse the decision of the Commissioner (Docket 12) is denied and defendant's motion to affirm the ALJ's decision (Docket 14) is granted.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 10) is incorporated by reference. The parties JSDF (Docket 11) will be cited where appropriate. Further recitation of salient facts is included in the discussion section of this order.

On December 9, 2008, Ms. Steinback filed an application for disability insurance benefits ("DIB") asserting an onset of disability date of December 20, 2000. (Docket 10 at p. 1 ¶ B). Her date of last insured for DIB coverage purposes was December 31, 2005. Id.

On October 10, 2010, the ALJ issued a decision finding Ms. Steinback was not disabled. (Administrative Record at pp. 21-30) (hereafter "AR at p. ____"). The Appeals Council denied Ms. Steinback's review request. (Docket 10 at p. 2 ¶ C). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. Id. It is from this decision which Ms. Steinback timely appeals.

The issue before the court is whether the ALJ's decision of October 10, 2010, that Ms. Steinback "was not under a disability . . . from December 20, 2000, . . . through [December 31, 2005][]" is supported by the substantial evidence on the record as a whole. (AR at p. 21). See also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the

Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' "  Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

Ms. Steinback challenges the ALJ decision on four grounds.  The ALJ improperly:

1. Disregarded the opinions of Dr. Engelbrecht, claimant's treating physician;

2. Discredited Ms. Steinback's subjective complaints;

3. Disregarded the affidavit of Ryan Steinback, claimant's husband; and

4. Applied the burden-shifting rules.

(Docket 13 at pp. 4-5).  Each challenge will be addressed separately.

**1. THE ALJ IMPROPERLY DISREGARDED THE OPINIONS OF DR. ENGLEBRECHT.**

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) (citation and internal quotation marks omitted).  However, "while entitled to special weight,

4

it does not automatically control, particularly if the treating physician evidence is itself inconsistent." Id. (citations and internal quotation marks omitted). If the treating physician's opinion is not given controlling weight under 20 CFR § 404.1527(d)(2), it must be weighed considering the factors in 20 CFR §§ 404.1527(d)(2)-(6). See Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) ("Where controlling weight is not given to a treating source's opinion, it is weighed according to the factors enumerated . . . ."). The ALJ is free to accept those opinions of a treating physician which are supported by the medical evidence and plaintiff's own testimony. See House, 500 F.3d at 744-46. "[W]hen a treating physician's opinions are inconsistent [with] . . . the medical evidence as a whole, they are entitled to less weight." Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (citations omitted). The ALJ must " 'give good reasons' for discounting a treating physician's opinion." Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002).

Ms. Steinback argues the ALJ should have adopted Dr. Engelbrecht's opinion in developing her residual functional capacity ("RFC"). (Docket 13 at p. 8). Even though Dr. Engelbrecht was her treating physician since 1998, Ms. Steinback contends "[t]he ALJ provided no clear and convincing reasons for rejecting his opinions." Id.

5

Dr. Engelbrecht completed a Lupus Residual Functional Capacity Questionnaire on January 6, 2009. (Docket 10 at ¶ 25). He found Ms. Steinback had systemic lupus erythematosus ("SLE")[3] and her conditions as outlined in the questionnaire existed at least since December 2000. Id. After reporting Dr. Engelbrecht's opinions from the questionnaire, the ALJ concluded:

> While Dr. Engelbrecht is a treating medical source, the undersigned gives no weight to this opinion. It gives the claimant a less than sedentary residual functional capacity that she cannot perform for even one-half of a workday. In reviewing his treatment records, none of these limitations are noted prior to her date last insured. The claimant's lupus was in remission and she was not even taking medications for extended periods of time.

AR at p. 28.

A review of Dr. Engelbrecht's medical records for the critical December 20, 2000, through December 31, 2005, time period disclose the following:

- 1998: Dr. Engelbrecht diagnosed Ms. Steinback with SLE. (Docket 10 at p. 6 ¶2);

---

[3]Systemic Lupus Erythematosus is a "chronic inflammatory disease of connective tissue, of unknown etiology, that affects the skin, joints, kidneys, nervous system, and mucous membranes. A characteristic butterfly rash or erythema may be present on the malar areas and across the nose. The disease may begin acutely with fever, joint pain, and malaise or smolder over a period of years with intermittent fever and malaise. Symptoms from any organ system may be present." (Docket 10 at p. 5 at ¶ 16).

- Ms. Steinback was prescribed prednisone, a corticosteroid, and Plaquenil, an antimalarial agent for lupus and rheumatoid arthritis. Id. at ¶ 3;

- July 2000: Ms. Steinback reported she had been off Plaquenil for about two months. A few days ago she began experiencing bilateral groin pain, left knee swelling, and some dysesthesias in her left foot, and some fatigue. She was restarted on prednisone and Plaquenil. Id. at p. 8 ¶ 11;

- August 2000: Dr. Engelbrecht discontinued Plaquenil because Ms. Steinback was pregnant. Id. at ¶ 12. Her condition "settled down very nicely with pushing the prednisone up and then the Plaquenil." (Docket 11 at ¶ 5) (emphasis in original);

- November 2000: Ms. Steinback had been off Plaquenil a sufficient amount of time that a flare up would have occurred if there was a problem. Id. at ¶ 6. Ms. Steinback "looks generally quite healthy." Id.;

- May 2001: Dr. Engelbrecht noted "[n]o signs of lupus - no sign of any flare." Id. at ¶ 7. She had no joint swelling, no limitation of motion and no skin rashes. Id. She was not prescribed any medications because she was breast feeding. Id.;

- December 2001: she was doing well, had no major flares, clear skin and no signs of active synovitis. Id. at ¶ 8. Dr. Engelbrecht recommended using a low dose of prednisone if she had a flare, but he was not going to prescribe Plaquenil at that time. Id.;

- June 2002: Ms. Steinback was "actually doing pretty well." Id. at ¶ 9. There had been no sign of a flare, she was using a little prednisone, but still off Plaquenil. Id. Her joints were generally pretty good, but if she overdid it physically, she would have a bit of a flare. Id. No significant inflammation of her joints. Id. Dr. Engelbrecht opined her lupus was overall clinically stable on her present treatment course. Id.;

- December 2002: Ms. Steinback reported she had done very well overall with no reoccurrence of her lupus. Id. at ¶ 10. She had been busy with school, but otherwise doing well. Id. She

7

> reported using "hardly any" prednisone since June. Id. Her physical examination was unremarkable. Id.;

- March 2003: Ms. Steinback reported an episode of Bell's palsy, but nothing relating to SLE. (Docket 10 at p. 8 ¶ 13).;

- May 2003: Ms. Steinback reported being pregnant for a second time and was doing well, with no sign of any lupus activity. (Docket 11 at ¶ 11). No reported joint pain and was "really feeling quite good over-all." Id. She was still off Plaquenil with no rashes or other skin symptoms. Id. By examination her joints were "perfectly normal" without any active synovitis. Id. Dr. Engelbrecht opined her lupus was in remission and there was no significant disease activity for a couple of years. Id.;

- January 2004: following the birth of her second child, Ms. Steinback was still off Plaquenil and had only taken one or two doses of prednisone in the past six months. Id. at ¶ 12. On examination her joints looked good, with no sign of active synovitis. Id. Dr. Engelbrecht opined her lupus continued to be in remission while she was off Plaquenil. Id. Follow-up examinations would be on an as-needed basis. Id.;

- July 2005: Ms. Steinback requested a refill of prednisone, which she was only using rarely and only for short time periods when she had a flare up. A bottle of 50 5mg tablets lasted two years. (Docket 10 at p. 8 ¶ 14); and

- November 2005: Ms. Steinback reported a flare up of SLE. She had done well until a couple of months ago when she began experiencing joint achiness, another episode of Bell's palsy and parotiditis. On examination, Dr. Engelbrecht observed normal joint mobility and no active synovitis or acute tenderness. It was unclear whether these symptoms were a lupus flare-up or a result of injections for treatment of endometriosis-which has side effects including muscle or joint pain, fatigue and swelling. She was restarted on Plaquenil. Id. at p. 9 ¶ 15.

Not one of Dr. Engelbrecht's medical records contain references to any restrictions on Ms. Steinback's life or work activities and no indication of

8

any interference with her ability to concentrate and give attention to her work activities.  Notwithstanding the absence of historical medical record support, Dr. Engelbrecht's questionnaire responses identify significant restrictions on Ms. Steinback's physical activities: cannot sit for more than 15 minutes; cannot stand for more than 5 minutes; can only stand/walk less than 2 hours in a work day; and will require a 10-60 minute rest period before returning to work.  (AR at p. 12).  In addition, Dr. Engelbrecht's responses place physical restrictions on Ms. Steinback's work capabilities which are absent in her medical records:  can never twist, stoop, crouch, climb ladders, climb stairs; can only engage in repetitive motions for 10 percent of an 8-hour work day involving her hands, fingers and arms.  Id. at p. 14.

The ALJ gave good reasons for rejecting Dr. Engelbrecht's RFC opinions.  Dolph, 308 F.3d at 878-79.  It is not the role of the court to re-weigh the evidence and it cannot reverse the Commissioner's decision because the decision is supported by good reason and is based on substantial evidence.  Guilliams, 393 F.3d at 801.

**2.     THE ALJ IMPROPERLY DISCREDITED MS. STEINBACK'S SUBJECTIVE COMPLAINTS.**

The ALJ acknowledged Ms. Steinback's SLE "could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms

9

are not credible to the extent they are inconsistent with the [RFC to perform a full range of light work]." (AR at p. 28).  Ms. Steinback argues the ALJ discredited her subjective complaints of pain, but "if he had concerns about her credibility, he should have sought further clarification at the hearing." (Docket 13 at p. 10).  Because she had a history of SLE and arthritis, Ms. Steinback argues "the objective medical evidence does support [her] complaints of pain." Id. at p. 12 (emphasis in original).

When analyzing a claimant's subjective complaints of pain, the ALJ must examine:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. the dosage, effectiveness and side effects of medication; and

5. functional restrictions.

Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ may properly discount the claimant's testimony where it is inconsistent with the record.  Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).  "[T]he ALJ cannot simply invoke Polaski or discredit the claims because they are not fully supported by medical evidence. . . . Instead, the ALJ must make an express credibility determination that explains, based on the record as a

10

whole, why the claims were found to be not credible." Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (internal citation omitted).

Ms. Steinback's testimony is accurately reported in the JSMF. (Docket 10 at ¶ 37). She changed her work hours in about 1999 to 9 a.m. to 4 p.m. from a later shift due to fatigue and pain. (AR at p. 28). Her duties as a cashier/stocker for a party supply store in 2000 included helping customers find items, stocking, filling balloons, making balloon bouquets, operating the cash register, reordering stock, and assisting customers in the preparation of wedding announcements, graduation announcements, and personalized napkins. (AR at p. 170). Ms. Steinback quit working in December 2000 because she was five months pregnant and was concerned about her lupus flaring up. "[M]y lupus would be much more severe had I continued working while raising my family." Id.

Without repeating what Ms. Steinback reported to Dr. Engelbrecht during the 2000 to 2005 time period, it is clear she was doing well, her SLE was in remission, she quit taking Plaquenil and rarely used prednisone. Her testimony at the hearing was inconsistent with her medical history. While off work and raising her two children, Ms. Steinback completed a four-year college degree in accounting in 2004. (Docket 10 at p. 5 ¶ 1; AR at p. 29). The ALJ found the record to be consistent with "a functioning level of at least light exertion." (AR at p. 29).

The ALJ did not totally reject Ms. Steinback's testimony regarding pain intensity, but rather the ALJ chose to conclude her activities of daily living were inconsistent with the pain intensity claimed. "The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard." Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (referencing Polaski). "Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation marks and citations omitted). The court will not disturb the ALJ's credibility determination.

### 3. THE ALJ IMPROPERLY DISREGARDED THE AFFIDAVIT OF RYAN STEINBACK, CLAIMANT'S HUSBAND.

The ALJ gave no weight to the affidavit of Mr. Steinback concluding "[t]he contents indicate the claimant's functioning and limitations at the current time [2010]. There is no reference to her functioning as of her date last insured." (AR at p. 28). Mr. Steinback's affidavit was signed on July 26, 2010. (Docket 10 at p. 15 ¶ 35). Comparing the contents of the affidavit (AR at p. 200) and the summary in the JSMF (Docket 10 at p. 15 ¶ 35) requires the court to reach the same conclusion reached by the ALJ. The affidavit does not address Ms. Steinback's physical and medical

conditions during December 2000 to December 2005. All references are in the present tense and describe Ms. Steinback's limitations in 2010.

"Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe, 226 F.3d at 972. Again, the court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz, 479 F.3d at 983 (internal quotation marks and citations omitted).

### 4. THE ALJ IMPROPERLY APPLIED THE BURDEN-SHIFTING RULES.

Ms. Steinback argues the ALJ improperly shifted the burden of proof to her at step five in the sequential process. She contends the ALJ's statement "[a]lthough the claimant continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration." (Docket 10 at p. 13) (citing AR at p. 24).

Plaintiff fails to acknowledge the next sentence in the ALJ's summary of the sequential process. After the above statement the ALJ continued, "[i]n order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), and

13

404. 1560(c)).” (AR at p. 24). The complete passage in the ALJ's decision is an accurate statement of the law and the obligation of the ALJ in the sequential evaluation process.

The ALJ concluded Ms. Steinback had the RFC "to perform the full range of light work as defined in 20 CFR 404.1567(b)." Id. at p. 25. This conclusion is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Choate, 457 F.3d at 869; Howard, 255 F.3d at 580. With this RFC, the ALJ found Ms. Steinback was capable of performing her past relevant work as a cashier/clerk. (AR at p. 29). Although inartfully stated, the conclusion Ms. Steinback had an RFC to perform past relevant work was a determination at step four of the sequential evaluation process. See 20 CFR § 404.1520(a)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled."). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. 20 CFR § 404.1520(a)(4). See also Nimick v. Secretary of Health and Human Services, 887 F.2d 864, 865 (8th Cir. 1989).

The ALJ did not improperly shift the burden of proof in the sequential evaluation process.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse (Docket 12) is denied.

IT IS FURTHER ORDERED that defendant's motion to affirm (Docket 14) is granted.

Dated March 24, 2014.

                         BY THE COURT:

                         /s/ *Jeffrey L. Viken*
                         JEFFREY L. VIKEN
                         CHIEF JUDGE